No. 84-565

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN RE THE MARRIAGE OF

ARTHUR E. STAUDT,

Petitioner and Respondent,

and

MARILYN J. STAUDT,

Respondent and Appellant.

_____

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Stillwater,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joseph E. Mudd, Bridger, Montana

For Respondent:

Parker, Sweeney, Healow & Lee; Mark D. Parker,
Billings, Montana

_____

Submitted on Briefs: March 28, 1985

Decided: May 23, 1985

Filed: MAY 2 1985

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Arthur E. Staudt filed a petition for dissolution of marriage which was tried on May 3, 1984. The Stillwater County District Court entered findings of fact and conclusions of law and a judgment on August 6, 1984. Marilyn J. Staudt appeals from this judgment. We affirm.

Arthur and Marilyn Staudt were married on June 8, 1957. They have two sons, born in 1960 and 1962. Arthur graduated with a degree in veterinary medicine in 1960. In 1964, the Staudts built a veterinary clinic in Absarokee, Montana, for $30,000; $10,000 of that sum was received as a gift from Marilyn's grandmother.

In 1969 the Staudts bought a ranch for $56,000. It was purchased on a contract for deed, with the down payment being borrowed. In 1972, Arthur retired from the practice of veterinary medicine and the Staudts devoted their time to raising and selling registered horses. The Staudts lived together on the ranch until 1981 when they separated and Marilyn moved from the ranch. They attempted an unsuccessful two-month reconciliation in 1982 prior to commencement of these proceedings.

The only asset the Staudts have of any significant value is the ranch which has increased in value to approximately $450,000. Before trial, the Staudts stipulated that the ranch was to be sold and the District Court was asked only to set the percentage division of the sale proceeds between the parties.

The District Court apportioned the Staudts' property approximately evenly. It is from this distribution that Marilyn appeals. The specific issues appellant addresses on appeal are as follows:

2

1. Whether the inheritance of the appellant should have been the sole property of the wife or included in the marital estate.

2. Whether the court erred in the valuation of the stock in question.

3. Whether the court abused its discretion in dividing the real property.

4. Whether the court erred in requiring that the wife pay one-half of the ranch operating debt, existing at date of separation.

5. Whether the District court erred when it failed to include, as a marital debt, the indebtedness incurred by the wife for the purpose of making the ranch payment.

6. Whether the court erred in failing to include in the distribution of property, the tractor, manure spreader and disk.

7. Whether a new trial should have been granted.

## The Inheritance of Appellant

In 1975, Marilyn inherited various stocks from her grandmother. These stocks were placed in trust in 1975 and disbursed in 1979. The stocks have been held at Paine, Webber, Jackson & Curtis since 1979 as a stock portfolio. They have not been cashed and remain in the same form. Income from these stocks has been used in the marriage. Since separation of the parties, the income has been used by Marilyn alone.

The District Court treated this stock as a marital asset and appellant asserts this is error. Appellant particularly takes exception to the District Court finding "[i]n that the stock was preserved due in good part to Petitioner's contributions of his income, said stock should be considered a marital asset."

3

Section 40-4-202(1), MCA, provides, in part, that in a dissolution of marriage, the District Court shall:

"equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . . In dividing . . . property acquired by gift, bequest, devise, or descent . . . the court shall consider those contributions of the other spouse to the marriage, including:

"(a) the nonmonetary contribution of a homemaker;

"(b) the extent to which such contributions have facilitated the maintenance of this property;"

This Court has recognized that inherited assets are marital property, but the District Court must consider the origin of the assets and the contributions of the divorcing parties to its preservation when making an award of assets. In re the Marriage of Keepers (Mont. 1984), 691 P.2d 810, 41 St.Rep. 2163. There was no question that Arthur worked hard in the marriage. The preservation of the stock in its original form was due, at least in part, to his hard work. It never became necessary to sell the stock because the Staudts had an income from the ranch.

The District Court awarded the stock to Marilyn in the division of property. We affirm the inclusion of this stock in the marital property.

Valuation of Stocks

The appellant also contends that the District Court erred in its valuation of the stock. The District Court valued the inherited stock at $60,500. Both parties submitted affidavits to the court listing their assets and liabilities. Both parties valued the stock in their affidavits at $60,000. At trial, appellant testified the stock was worth approximately $54,000 to $55,000. In his proposed findings

4

of fact, respondent valued the stock at $60,497.45. In an affidavit submitted to the court after judgment was rendered, appellant stated the stock had declined in value to $48,000.

Clearly, the value of stock is subject to fluctuation. The trial judge is free to select the value he wishes, so long as there is substantial credible evidence to support the value he selects. In re the Marriage of Glass (Mont. 1985), 42 St.Rep. 328. Therefore, the trial judge did not err when he adopted the value respondent placed on the stock.

We affirm the valuation of the inherited stock by the trial judge.

### 50/50 Division of Property

Appellant argues that the division of the ranch proceeds was an abuse of discretion by the District Court. The main thrust of her argument is that she contributed $10,000 to build their first veterinary clinic which, when sold, went toward the purchase of their ranch.

Although it is true that one-third of the clinic was paid for by the appellant, the remaining two-thirds was paid principally by the work and veterinary practice of the respondent. A trial court has far-reaching discretion in making property divisions in dissolution proceedings. In re the Marriage of Madden (Mont. 1984), 683 P.2d 493, 41 St.Rep. 1332. We see no abuse of that discretion in the equal division of the ranch property. We affirm.

### 50/50 Split of Ranch Operating Debt

In 1981, when Marilyn and Arthur separated, the ranch operating debt was $29,400. Since the separation the debt has increased to $52,416. The District Court found this increase was a result of the sole actions of Arthur and he should be totally responsible for the debt incurred since the separation. The District Court found the debt at the time of

5

separation, $29,400, to be a marital debt. Each party was to pay one-half of the sum, or $14,700.

Appellant argues that the court erred by failing to offset this debt with the assets it secures, the horses and cattle. She contends that since Arthur was awarded the horses, he should have to pay the full debt on them.

It may be true that the debt of $29,400 was mostly incurred for the purchase of horses for the ranch. However, prior to the separation, both Marilyn and Arthur worked on the ranch and incurred this ranch indebtedness together. The debt is a marital debt and the court may order it be borne by both parties.

We affirm the equal allocation of ranch operating debt prior to separation.

Failure to Include Ranch Payment as Debt

Since the Staudts' separation, two annual contract payments on the ranch, for the years 1982 and 1983, have become due. The 1982 payment was made by Arthur. In 1983, Marilyn received a default notice that the ranch payment of $5,188.79 had not been made. She borrowed the money from her mother in order to make this payment.

Appellant argues that it was error for the court not to include this debt incurred by her, among the martial debts and require repayment thereof.

The District Court did not discuss this debt extensively, but did indicate awareness of it in its findings of fact number 10, when it stated: "Since separation, both have participated in making payments on the ranch and both have received some income from the ranch."

It was a burden for Marilyn to have to make this ranch payment when she was not even living on the ranch. However, the payment was made to protect her equity in a very

6

important asset. She, as well as her husband, is responsible for preserving the ranch because upon its sale she will receive one-half of the proceeds. As with the division of property, the District Court is given wide discretion in the division of debts. In re the Marriage of Loegering (Mont. 1984), 689 P.2d 260, 41 St.Rep. 1892. We see no error in the District Court's failure to include this ranch payment in marital debts. We affirm.

Failure to Include Farm Equipment

Appellant argues that the District Court erred in failing to include a tractor, manure spreader and disk as marital assets when making the distribution of property. There are numerous items on the ranch that the District Court did not list specifically. The words "ranch property" were meant to include more than just the land and buildings. Since the tractor, the manure spreader and the disk were not singled out or listed as assets with any specific value, they were meant to be included in "ranch property." The District Court did not err in failing to name them separately in the distribution of property.

New Trial

After judgment had been rendered, appellant made a motion to amend judgment, or in the alternative for a new trial, on the issue of the value of the horses. Appellant testified at trial that the horses were worth at least $52,000. Respondent testified the horses were worth about $30,000. The District Court placed the value of the horses at $40,000.

Appellant attached a Billings Gazette newspaper article to her brief on the motion. The article indicates that the horses owned by Arthur Staudt were racing well at Billings.

7

Appellant contends this is evidence that the horses are worth more than $40,000.

It may well be that the horses are worth more than $40,000 at this time. Clearly, assets will appreciate or depreciate. However, a new trial cannot be granted every time the value of an asset changes. The value placed on the horses by the District Court was within the range of values given to the court at trial. A newspaper article is not sufficient evidence to mandate a new trial. We affirm.

Justice

We concur:

John Conway Harrison

L. C. Gulbrandson

William E. Hunt

Justices