No. 85-637

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN RE THE MARRIAGE OF
KAREN RAYE JOHNSTON,

        Petitioner and Respondent,

   and

GAROLD DAVE JOHNSTON,

        Respondent and Appellant.

_____

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable A. B. Martin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Torger S. Oaas, Lewistown Montana

    For Respondent:

        R. W. Heineman, Wibaux, Montana

_____

Submitted on Briefs: July 24, 1986

Decided: October 9, 1986

Filed: OCT 9 1986

_____
Clerk

Mr. Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant, Garold Dave Johnston, appeals from the property settlement and award of attorney fees granted to respondent, Karen Raye Johnston, by the Dawson County District Court in a marital dissolution proceeding.

We affirm.

Appellant does not contest the grant of custody of their three minor children to respondent or the child support award. The issues on appeal are:

1. Did the District Court improperly deny appellant an in-kind distribution of the marital estate's minority shares in a closely-held family corporation and improperly required the corporation to finance the distribution of these shares?

2. Did the District Court improperly determine the value of the minority interest in the corporate shares of stock?

3. Did the District Court improperly award attorney fees to respondent?

Karen and Garold Johnston were married in 1967. In 1977, when their net worth was $47,801, they joined with the husband's family in forming a family farm and ranch corporation. The family members exchanged their real and personal property for corporate shares. Karen and Garold Johnston initially received 1250 shares for their contribution of properties accumulated during the 10 years of their marriage. They later received 180 shares as gifts for a total of 1430 shares. Garold Johnston received $500 per month for his work with the corporation. Each shareholder's

family, including Karen and Garold Johnson's family, was provided with living expenses such as a home, vehicles, utilities, health and vehicle insurance and groceries.

The parties' marriage was dissolved in 1983. The marital property consisted primarily of corporate assets and some personal property. The District Court found the corporation's net worth to be $1,732,789 or $217 per share. Consequently it valued the marital estate at $310,310. The court gave appellant a choice of two alternative methods whereby the value of the marital estate could be equitably distributed.

The first method provided that the 1430 shares be distributed to Garold Johnston and a 25% discount of the marital estate would be made. Garold would pay Karen Johnston $116,366 within 30 days of the judgment. Each party would pay their own attorney fees.

The second method grants Karen Johnston $155,155 from the marital estate plus costs and attorney fees. No discount is provided on the value of the shares. Payment would be made in ten equal annual installments with 10% interest per annum. Karen would have a first security interest in the 1430 shares assigned to Garold for the total sum of the judgment. If an annual installment is not paid, Garold would promptly offer to sell and assign to the corporation and the shareholders the number of shares necessary to raise the installment amount at the price the offerees would be willing to pay per share. If the corporation or the shareholders are unwilling to buy, Garold would assign to Karen the number of shares necessary to pay the installment payment. The price of the shares would be determined by what Karen can sell the shares for on the open market. Both parties must make

reasonable efforts to find a buyer. If a buyer cannot be found within 30 days, Karen may then buy the shares at her price in place of receipt of the annual installment.

Appellant argues that the District Court improperly divided the marital assets. First appellant contends that the District Court should have made an in-kind distribution of the shares in place of awarding annual payments to respondent. The extensive findings of fact indicate that appellant received a $500 monthly wage and annual bonuses ranging from $1,000 to $2,500. The corporation provided each family with a home, food, vehicles, utilities and insurance. The District Court found these corporate benefits constituted a substantial income substitute to appellant--at least the equivalent of a $15,000 annual income when wages, bonuses, fringe benefits and tax advantages were taken into account.

Besides respondent, appellant and his parents and brothers are the only other shareholders and the sole actors in the corporation. They have a supportive and common interest in the preservation of their family enterprise. Testimony was presented which indicated appellant's father, the corporation's president, was opposed to purchasing any minority shares respondent might own.

Appellant continues to receive all of the above benefits from the corporation. Respondent has received nothing from the corporation since her separation from appellant in 1983.

This Court has previously held that simply because the option of making a distribution of stock in-kind was open to the court, this is no reason the District Court had to select it. Burleigh v. Burleigh (Mont. 1982), 650 P.2d 753, 757, 39 St.Rep. 1538, 1543, followed in In re the Marriage of Wessel (Mont. 1986), 715 P.2d 45, 43 St.Rep. 405.

The District Court found that dividing the stock evenly between the husband and wife would not produce an equitable result. It reasoned that while the corporate by-law restrictions reduce the actual value of the shares individually owned by the parties, they do not reduce the underlying value of the shares in the hands of the family corporation.

Even if half of the 1430 shares were retained by respondent, she would remain an outsider in this closely-held family corporation. She would not receive income or benefits from the corporation because she is no longer a part of the farming operation. She would not receive dividends as the corporation has never issued them.

An in-kind distribution of closely-held corporate shares is not required when this would not produce an equitable settlement between the parties. Sufficient evidence appears on the record to uphold the District Court's conclusion that an in-kind distribution of these shares would provide little benefit to respondent. The District Court was correct in presenting other methods of distribution for the estate.

Appellant contends that the District Court required the closely-held corporation, Johnston/Will, Inc., to finance the distribution of the marital estate's minority shares and that this was improper as such since the corporation was not a party to this suit. The record does not support this contention. Johnston/Will, Inc.'s corporate by-laws restrict the sale of stock by shareholders. The stock must first be offered to the corporation for sale. If the corporation does not buy within 30 days, the shares are offered to the shareholders for sale. Shareholders then have 30 days to match the asking price before an outside sale can be made.

The alternative methods presented by the court took these restrictions into account. The corporation was not required to fund the distribution. Under the second method, the method chosen by appellant, the corporation was simply provided with a chance to purchase shares pursuant to the by-law restrictions should appellant not meet the annual installment obligations due to respondent. This is fully in keeping with the provisions of § 40-4-202, MCA.

Appellant next contends the District Court improperly valued the jointly-owned stock by failing to take into account the net worth of the husband and wife before they joined Johnston/Will, Inc. and improperly failed to discount the shares of stock in its valuation. Appellant notes that this Court has previously held that a district court must consider the matter of a discount of minority stock in making its decision. In re the Marriage of Buxbaum (Mont. 1984), 692 P.2d 411, 41 St.Rep. 2243. Appellant argues the District Court was in error when it failed to discount the stock in question because of its minority position. He contends that appropriate significance was not given to the preincorporation net worth. The value of the shares was based solely on the underlying value of the corporation. Appellant argues that as a result they were given too high a value.

The District Court found the parties' net worth to be $47,801 just prior to incorporation in December, 1977. At trial, the corporation's accountant testified for appellant and projected the corporation's net worth to be $1,284,839. In contrast, respondent's expert witness stated it was $2,179,738. The District Court found the net worth to be $1,732,789 or $217 per share.

- 6 -

The record indicates that the District Court did consider the possibility of discounting the value of the parties' minority shares. Under the method chosen by appellant, the court concluded that it was not proper to discount the value per share of stock for market value purposes even though it was a minority interest. This was not found to be a situation where a discount would accurately reflect a minority shareholder's lack of ability to control salaries, dividends or other corporate benefits. In re the Marriage of Buxbaum (Mont. 1984), 692 P.2d 411, 41 St.Rep. 2243. Valuation of the shares was done by looking to the underlying value of the corporation.

In valuing the assets in a marital dissolution case, it must be noted that the District Court has broad discretion to determine net worth. In re the Marriage of Kaasa (1979), 181 Mont. 18, 22, 591 P.2d 1110, 1112. We will not set aside a district court's finding of fact unless the finding represents an abuse of discretion. Reese v. Reese (1977), 185 Mont. 52, 55, 604 P.2d 326, 328 followed in In re the Marriage of Reich (Mont. 1986), 720 P.2d 286, 288, 43 St.Rep. 1167, 1168. The record indicates the District Court considered the preincorporation net worth and the valuation testimony of both parties. There was no abuse of discretion by the District Court and the findings on this matter will not be disturbed.

Finally on this issue, the Court is aware that no testimony exists in the record that the net worth of the corporation was exactly $1,732,789 or $217 per share. We have held that a district court is free to find a value for marital property within the range of evidence submitted. In re the Marriage of Staudt (Mont. 1985), 700 P.2d 175, 178, 42

- 7 -

St.Rep. 740, 744. This value was well within that range of evidence submitted and was thoughtfully arrived at by the District Court. We uphold the District Court's valuation of the corporate stock owned by the marital estate.

Appellant's final contention is that the District Court erred in awarding attorney fees to respondent. Section 40-4-110, MCA, allows attorney fees after both parties' financial resources are considered. After hearing on the matter, the District Court awarded $7,205.00 in attorney fees to respondent.

An award under this statute is "largely discretionary with the District Court, and we will not disturb its judgment in the absence of an abuse of that discretion." In re the Marriage of Milanovich (Mont. 1985), 697 P.2d 927, 929, 42 St.Rep. 436, 439, quoting Talmage v. Gruss (1983), 202 Mont. 410, 412, 658 P.2d 419, 420. The record indicates that the parties financial resources were fully considered. No abuse of discretion was made by the District Court. The award of attorney fees to respondent is affirmed.

The judgment of the District Court is affirmed in full.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices