No. 86-136

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

IN RE THE MARRIAGE OF
CARLA WILEY HAMMILL,

Petitioner and Appellant,

and

GARY DOUGLAS HAMMILL,

Respondent and Repondent.

---

APPEAL FROM: District Court of the Eleventh Judical District,
In and for the County of Flathead,
The Honorable Nat Allen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Oleson Law Firm; H. James Oleson, Kalispell, Montana
William Boggs, Missoula, Montana

For Respondent:

Warden, Christiansen, Johnson & Berg; Gary R. Chris-
tiansen, Kalispell, Montana
Robert B. Allison, Kalispell, Montana

---

Submitted on Briefs: Nov. 25, 1986

Decided: February 4, 1987

Filed: FEB 4 - 1987

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Carla Willey Hammill appeals the disposition of marital property and award of joint custody ordered by the District Court, Eleventh Judicial District, County of Flathead. The valuation and division of marital property is affirmed; the issue of child custody is remanded.

Carla Willey Hammill and Gary Douglas Hammill were married June 3, 1967 in Iowa. They both attended Iowa State University, and upon their graduation in 1969, moved to Whitefish, Montana where Gary had a job as a veterinarian. Carla taught art and physical education in Whitefish until she became pregnant with her first son, Chet. Chet was born in September, 1971. A second son, Curt, was born in May, 1974.

The family moved to Kalispell in 1971, where Gary opened his own practice at Ashley Creek Animal Clinic. He suffered a severe back injury in 1972 when a metal kennel gate fell on his back. The pain caused by the injury led him to curtail his veterinary practice. He took on a partner in 1983, and eventually sold out his interest to the partner in January, 1985.

Carla and Gary separated in 1982, and the petition for dissolution was filed December 2, 1982. The couple entered into a temporary joint custody agreement on September 6, 1983, whereby the primary residency of the two boys was to be with their mother, the father having the boys every other weekend and six weeks during the summer. Gary also agreed to pay $250.00 per child per month in child support.

On December 13, 1983, the District Court appointed an attorney, Robert Allison, to represent the boys in this

proceeding. A bench trial took place before the Honorable James M. Salansky on June 14, 1984. Attorneys for all parties were present, and a request that the court talk with the children in chambers was taken under advisement. The children did not testify at this time, and when the parties rested, the entire proceeding was taken under advisement. Mr. Allison also submitted a report to the court on the matter of custody arrangements, this report also being taken under advisement.

Judge Salansky's subsequent illness and death prevented a final disposition of the matter. The Honorable Nat Allen was appointed to the case, and another bench trial was held December 5, 1985, at which time the marital property division and permanent custody arrangements were decided. For some reason, the children's attorney was not notified of this trial, and no evidence or testimony other than that of the parents was presented on the children's behalf. Each boy was briefly and separately interviewed by Judge Allen in chambers, with a court reporter present.

At the end of the trial, Judge Allen stated he was going to keep the boys together rather than split custody between the parents, and that physical custody would alternate annually between mother and father. He stated that while the parties were free to propose findings otherwise, he was deciding custody as indicated. Both parties submitted findings of fact and conclusions of law as to the value of marital assets, the division of assets and liabilities, and child custody arrangements. The court adopted the husband's findings verbatim, and the wife appeals the decision.

Carla Hammill sets forth the following issues on appeal:

(1) Whether the District Court erred in evaluating the marital property as of December, 1985 (the date of the dissolution), rather than as of October, 1982 (the date of the parties' separation)?

(2) Whether the District Court erred in dividing the marital property on a 50-50 basis?

(3) Whether the District Court erred in adopting the husband's findings verbatim?

(4) Whether the District Court can determine contested custody without stating its reasons therefor?

(5) Whether the District Court determined custody without considering the best interests of the children?

The younger son, Curt, also appeals the custody order through his co-counsel, William Boggs. Mr. Boggs was appointed co-counsel with Mr. Allison, and given leave to file a brief by order of this Court dated August 21, 1986. The issues raised by Curt are:

1. Whether a custody decree can stand where the attorney appointed to represent the children was not notified of and did not participate in the trial which determined custody?

2. Whether the District Court considered all five factors affecting the best interests of the children, as required by § 40-4-212, MCA?

3. Whether joint custody is in the best interests of the children?

Property Disposition

In reviewing the division of property made by a district court, we will not disturb the decision absent a clear abuse of discretion. The test of abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. In Re Marriage of Rolfe (Mont. 1985), 699 P.2d 79, 83, 42 St.Rep. 623, 626.

Carla Hammill first challenges the valuation date used by the District Court. She argues the court should have used

- 4 -

1982 values for the marital property - 1982 being the date of the parties' separation - rather than 1985 values - 1985 being the date of the dissolution of the marriage.

The general rule in Montana is that "[a] proper disposition of marital property in a dissolution proceeding requires a finding of the net worth of the parties <u>at or near the time of the dissolution.</u>" In Re Marriage of Loegering (Mont. 1984), 689 P.2d 260, 264, 41 St.Rep. 1892, 1896. (Emphasis added.) The policy of using the dissolution date for valuation of property is that this valuation date most clearly reflects the status of the property at the time of trial. In Re Marriage of Hamilton (1980), 186 Mont. 282, 283, 607 P.2d 102. In this case, Carla does not argue that the 1985 values were inaccurate or incorrect in themselves. Rather, she argues that the court should have adopted the 1982 values which she proposed. A trial judge is free to select whatever value he or she wishes, so long as there is substantial credible evidence to support the value selected. In Re Marriage of Staudt (Mont. 1985), 700 P.2d 175, 177, 42 St.Rep. 740, 743.

There is no evidence in the record which conflicts with the 1985 values adopted by the District Court, and we therefore hold the court did not abuse its discretion in adopting the 1985 valuation date.

The second issue Carla raises is whether the court erred in dividing the marital property on a 50-50 basis. The marital property was divided as follows:

| Property | To Husband | To Wife |
|---|---|---|
| Home (1015 First Avenue East, Kalispell, MT) | $ 34,568.18 (He shall be solely responsible for the mortgage balance) | |

| Property | To Husband | To Wife |
|---|---|---|
| Unimproved property (LaBrant Road tract) Flathead County, MT) | ¼ (the Easterly tract) | 3/4 (The Westerly three tracts) |
| | 23,700.00 | $71,100.00 |

(The parties shall share the payment of the Contract for Deed obligations on a pro rata basis, i.e., ¼ Husband, 3/4 Wife and property taxes shall be shared similarly if the taxes are not assessed separately)

| Property | To Husband | To Wife |
|---|---|---|
| International Scout | | $   500.00 |
| Van | $  3,000.00 | |
| Life Insurance Policy | $   665.00 | |
| Teacher's Retirement | | Unknown |

Household Furnishings:

Items 1 through 35 on Exhibit "A" as indicated                                     $  2,500.00

(Note:  Items being used by the parties' sons at this time will be made available to Respondent at the end of the 1985-86 school year.)

Items 1 through 35 on Exhibit "A" as indicated, exclusive of Item 17, which is located in the Kalispell home and shall be considered a part of said home                                                 $ 2,500.00

Items 36 through 67 on Exhibit "A"                           $  2,000.00

Each party shall retain the personal gifts noted at the end of Exhibit "A"

| Property | To Husband | To Wife |
|---|---|---|
| Contract Receivable (The parties will share payments received on this Contract receivable in the proportion that has been allocated) | $ 8,833.41 | $ 1,166.59 |
| TOTAL | $75,266.59 | $75,266.59 |

The marital liabilities (exclusive of those noted above) total $8,768.94 and shall be shared equally between the parties. The farm equipment, horse and shop equipment and the horses, which have not been allocated to either party above, shall be sold and the sales proceeds shall be applied to the marital debt. Husband, because of his experience with horses and horse owners, shall be primarily responsible for the sale of these assets. As assets are sold and debts are satisfied, a full and complete accounting shall be provided by him to Wife. Any proceeds from the sale of assets not required to satisfy the marital debts specified in Finding of Fact No. 13 or not required to pay the ongoing expenses incurred in keeping the horses from the time of this trial until their disposal (which the Court also recognizes as marital debt) shall be shared equally between the parties.

The District Court based this division of property on the nature of the assets, the contributions of the parties, the education and employment backgrounds and prospects of the parties, the health of the parties and their needs as parents. The court found that both parties were employed - Carla as a school teacher earning $15,000 per year with expectation of a tenured position; Gary as a veterinarian who did some consulting work, who was trying to start a new business, and who earned approximately $10,000 per year. Gary's back injury had caused him to limit and finally sell his veterinary practice in Kalispell, thus limiting his earning capacity. Carla had no physical disabilities. Carla also planned to remarry after the

dissolution of the marriage, and had established a household in Missoula three years previously. We find sufficient evidence in the record to support the District Court's division of marital property on a 50-50 basis.

Carla next contends the District Court's adoption of Gary's proposed findings of fact and conclusions of law was error. The standard of review for findings made by a district court is the same whether the district court prepared the findings or whether it adopted a party's proposed findings. In Re Marriage of Goodmundson (1982), 201 Mont. 535, 538, 655 P.2d 509, 511. This Court's test for the adequacy of findings is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented. In Re Marriage of Hurley (Mont. 1986), 721 P.2d 1279, 1285, 43 St.Rep. 1271, 1277. The findings in this case do meet the above tests. The court heard testimony from both parties as to the property and child custody issues, as well as examined exhibits, memoranda, and interrogatories filed and made part of the record below. There is ample evidence in the record to support the District Court's adoption of respondent's proposed findings of fact and conclusions of law, and we find the court did not abuse its discretion in so doing.

Child Custody

The remaining two issues raised by Carla involve the propriety of the award of custody of the two children. She urges us to reverse the joint custody award based on the alleged failure of the District Court to state its reasons for awarding joint custody, and its failure to consider the best interests of the children as set forth under § 40-4-212, MCA. The younger child, Curt, has also appealed the custody order, based on the alleged failure of the court to consider

the best interests of the children, and also on the failure to notify his attorney of the trial which determined custody.

We find that the failure to notify a child's attorney of proceedings affecting that child's interest constitutes reversible error, and so do not reach the issue of adequacy of the court's findings as to the best interests of the children.

Robert Allison was appointed by Judge Salansky as the children's attorney on December 13, 1983. Mr. Allison received notice of and attended conferences and a non-jury trial before Judge Salansky in 1984. The non-jury trial did not address the custody issue. On August 30, 1984, Mr. Allison submitted a report to the court detailing his interviews with the various parties and other witnesses, and suggesting a joint custody arrangement with physical custody being awarded to the mother until the children reached ninth grade, and thereafter physical custody being with the father for the remainder of the boys' time in high school.

Due to Judge Salansky's illness and death, the case was not decided in 1984. In 1985, Judge Allen was appointed to the case. For some reason, all notices thereafter concerning conferences and the trial were sent to counsel for Carla and Gary, but not to the children's attorney, Mr. Allison. While the appointment of an attorney to represent children in custody matters is discretionary with the court under § 40-4-205, MCA, once the attorney has been appointed, it is required that he or she is served with all orders, pleadings, notices, motions and other papers pertinent to the action. Rule 5(a), M.R.Civ.P.; § 25-3-402, MCA.

Further, the purpose of § 40-4-205, MCA, is to provide children with an advocate who will represent their interests and not the parents' interests. In Re Marriage of Kramer (1978), 177 Mont. 61, 72, 580 P.2d 439, 445. This means the

attorney must actively represent the children and and be given an opportunity to present to the court all the evidence he or she can marshal concerning the best interests of the children. Id. Obviously, the attorney cannot perform this role unless notified of conferences and hearings.

We therefore set aside the custody award as it applies to Curt Hammill. As we found in our order of August 21, 1986, the older brother, Chet, is apparently satisfied with the time-sharing custody arrangement and the custody award as to Chet is not at issue in this appeal. The District Court's disposition of the marital property is affirmed.

<em>John C. Sheehy</em>
——————————————
Justice

We Concur:

——————————————

——————————————
John Conway Harrison

——————————————

——————————————
William E. Hunt
Justices