# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 26, 2016 Session[1]

## MATTHEW WHEELER MABIE, M.D. v. CARLA JENNINGS MABIE

### Direct Appeal from the Circuit Court for Shelby County
#### No. CT-005633-11     Gina C. Higgins, Judge

---

### No. W2015-01699-COA-R3-CV – Filed January 9, 2017

---

This case arises out of a divorce action. After fourteen years of marriage, the husband filed a complaint for divorce. Following a brief and unsuccessful attempt at reconciliation, the wife filed a counter-claim for divorce. Throughout the marriage, the husband worked as a medical doctor and was a partner in a highly successful medical practice. The wife's primary role in the family was as a stay-at-home mother. The trial court declared the parties divorced and awarded the wife, among other things, rehabilitative alimony, alimony *in futuro*, and attorney's fees. The husband appeals the trial court's awards of alimony, the valuation of his interest in his medical practice, the award of attorney's fees to the wife, and the court's decision to not punish the wife for civil contempt of court. The wife seeks attorney's fees for defending this appeal. Discerning no reversible error, we affirm the judgment of the trial court. We deny the wife's request for attorney's fees on appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Kay Farese Turner and Emily Hamm Huseth, Memphis, Tennessee, for the appellant, Matthew Wheeler Mabie, M.D.

Mitchell David Moskovitz, Adam Noah Cohen and Zachary Michael Moore, Memphis, Tennessee, for the appellee, Carla Jennings Mabie.

---

[1]Oral argument in this case was heard at Union University in Jackson, Tennessee.

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Matthew Wheeler Mabie, M.D. ("Husband") married Carla Jennings Mabie ("Wife") on June 7, 1997. Two minor children were born of the marriage: a daughter, age thirteen at the time of trial, and a son, age six at the time of trial, which was in May 2013. Both children attended private schools in Memphis and were involved in demanding and expensive extra-curricular activities.

Husband and Wife were both age forty-one at the time of trial and age forty-three at the time of the court's ruling. Wife attained a Bachelor of Science degree in communications prior to the marriage, but she had not worked outside of the home since the birth of the parties' son in 2004. Prior to that, Wife worked off-and-on and was able to earn her real estate license. Working as a realtor, Wife earned approximately $40,000-$45,000 per year. However, by agreement of the parties, she had not been employed in any capacity for nearly ten years.

Husband graduated from medical school on the same day that he and Wife were married. He worked throughout the marriage as a medical doctor, and he began to work as an employee at Mid-South Pulmonary Specialists ("MSPS") in 2004. Husband became a partner in MSPS in 2007. Husband's employment and business interest in MSPS was a lucrative one for the family over the years, with his income in the three years prior to trial being (approximately) $890,000 in 2010, $818,000 in 2011, and $950,000 in 2012. This afforded the family a high standard of living that included private school educations for their children, expensive extra-curricular activities for the children, two homes in Memphis and a lake house in Arkansas, a boat, and vacations to Mexico, Canada, and elsewhere.

The parties' marriage had been troubled for many years. Husband moved out of the marital residence in November 2011 and filed a complaint for divorce on December 19, 2011. In his complaint, Husband alleged that Wife was guilty of inappropriate marital conduct and that irreconcilable differences had arisen in the marriage that would prevent the parties from living together as husband and wife. Husband requested that he be named "co-Primary Residential Parent" of both children. He also prayed for an equitable division of marital debts and property, the marital residence, including all furniture, for his separate property, and for attorney's fees, court costs and litigation expenses.

On January 27, 2012, both parties consented to an order of reconciliation pursuant to Tennessee Code Annotated section 36-4-126. In that order, Husband and Wife agreed

that Wife would maintain exclusive use of the martial residence and that the couple would continue with counseling during the six month suspension of the divorce proceedings. The attempt at reconciliation failed, and on June 22, 2012, the parties filed a consent order setting aside the order of reconciliation and resuming the discovery process.

On December 20, 2012, Wife filed an answer to Husband's complaint and a counter-complaint for divorce. Wife admitted to Husband's allegation of irreconcilable differences but alleged that he was the one guilty of inappropriate marital conduct. Wife requested that she be awarded alimony, attorney's fees, suit expenses, both temporarily and permanently, and that the court would make an equitable division of the marital property and debt between the parties. Wife also prayed that she be named the primary residential parent of the parties' children. Husband responded by amending his complaint to ask that the court name him primary residential parent of the children, rather than co-primary residential parent as he had originally requested. Wife answered this amended complaint and asked the court to deny Husband's request.

On March 7, 2013, Husband petitioned the court to hold Wife in civil contempt based on allegations that she had violated the mandatory injunction set forth in Tennessee Code Annotated section 36-4-106. Husband alleged that Wife had taken several different amounts, including one lump sum of $50,000, out of the parties' Morgan Stanley account without Husband's knowledge, and he requested that the Court charge these amounts against Wife's ultimate division of marital property. In May of 2013, Wife filed her own motion for contempt against Husband alleging that he was making disparaging comments about her to the children. The parties consented to an order that prevented them from talking badly about one another in front of the kids. Otherwise, regarding the children, it appears that the parties worked things out fairly well between themselves. There was never a guardian ad litem appointed for the children during the divorce, and no issues related to the children are on appeal.

On March 25, 2013, Wife filed a motion *pendente lite* for child support, alimony, and attorney's fees. This motion was heard over the course of two days by a divorce referee. Ultimately, the referee ordered Husband to pay Wife the sum of $10,000 per month throughout the pendency of the divorce proceedings, as well as other specific expenses relative to the children and the marital estate. The $10,000 amount included $3,200 in child support and $6,800 in transitional alimony to Wife. Husband was also ordered to pay $25,000 of Wife's interim attorney's fees. Neither party appealed the ruling of the divorce referee, and it was confirmed by the trial court on May 10, 2013.

The divorce case was tried over three days on May 15, 16, and 20, 2013. The trial court heard a substantial amount of testimony, including testimony from Husband, Wife,

3

experts for both sides, husband's mistress, and the parties' children, as well as being given evidentiary depositions and multiple trial memos and exhibits for review. At trial, Husband based his grounds for divorce on Wife's spending habits, her alleged harassment of him at work, and on multiple verbal and physical altercations. Wife based her grounds for divorce on Husband's infidelity and several verbal altercations between the parties.

On April 2, 2015, nearly two years after the trial concluded, Husband and Wife jointly moved the trial court to render a ruling on all pending issues and to enter a final decree of divorce. On May 4, 2015, the trial court issued an oral ruling on some of the items at issue in the divorce. At the conclusion of that proceeding, the trial court charged the parties and their counsel with assigning numerical values to various items of personal property in the marital estate. The court then stated:

> That leaves only the award of an attorney fee. And contingent upon how the breakdown plays out, how the division actually works out after the Court looks at the values assigned to those personal property items along with the accounts, the stocks, the bonuses, the Court will make its final determination as to what it's going to do with the attorney fee.

On May 20, 2015, the parties reconvened before the court so that it could complete its ruling on the outstanding issues. At this time, the trial court confirmed some portions of its initial ruling and supplemented others, including dividing bank accounts, vehicles, and other items of personalty. Ultimately, the trial court found the entire marital estate to be valued at $3,185,379, of which Husband was awarded $1,551,690 and Wife was awarded $1,064,581. Furthermore, the trial court awarded Wife $6,000 per month in rehabilitative alimony for three years and $5,000 per month of alimony *in futuro*. The award of alimony *in futuro* was ordered to be paid concurrently with the rehabilitative alimony. The trial court entered a written final decree of divorce on August 10, 2015, and incorporated by reference the transcripts from the May 4, 2015 and May 20, 2015 rulings. On August 10, 2015, the trial court entered a permanent parenting plan designating Wife as the primary residential parent and requiring Husband to pay $3,200 per month in child support. In addition to that sum, Husband is required to pay other expenses related to the children. Husband has not appealed the trial court's ruling with regard to parenting time or child support.

## II. ISSUES PRESENTED

Husband presents the following issues for review on appeal:

1.      Whether the trial court erred in awarding rehabilitative alimony and

4

alimony *in futuro* to Wife;

2. Whether the trial court erred in its valuation of Husband's business interest in MSPS;

3. Whether the trial court erred in awarding attorney's fees to Wife;

4. Whether the trial court erred in not charging Wife for civil contempt.

We note that Husband's brief is replete with sub-issues and arguments that are only tangentially related to the issues stated above. We pass on the offer to crawl down each rabbit hole presented by Husband, and rather we direct our attention to those issues properly before us on appeal.

Wife presents the following additional issue for review on appeal:

5. Whether Wife should be granted attorney's fees for defending Husband's appeal.

## III. DISCUSSION

This case was tried by the trial court without a jury. We therefore review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). Also, because the trial court has the opportunity to observe the demeanor of the witnesses and hear the in-court testimony, "[w]e afford 'considerable deference' to the trial court's determinations of credibility and the weight given to oral testimony." *Andrews v. Andrews*, 344 S.W.3d 321, 339 (Tenn. Ct. App. 2010). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hyneman v. Hyneman*, 152 S.W.3d 549, 553 (Tenn. Ct. App. 2003).

### A. Award of Spousal Support

As a preliminary issue, Husband asserts that the trial court's order awarding alimony contains insufficient findings of fact as to Wife's need in order to affirm the award on appeal. As this Court has repeatedly opined, Rule 52.01 of the Tennessee Rules of Civil Procedure requires written findings of fact and conclusions of law in a final judgment resulting from a trial without a jury. *See* Tenn. R. Civ. P. 52.01. Indeed, we recognize that the ruling of the trial court is not the gold standard for findings of fact and conclusions of law as it relates to Wife's need for spousal support. Nevertheless, because the trial court's reasoning is evident to some extent from its oral and written rulings, and

because it is clearly supported by the record, we choose to exercise our discretion and proceed to consider the merits of the alimony award. *See Hanson v. J.C. Hobbs Co.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012) (we may "soldier on" with our review when the trial court's reasoning is "readily ascertainable").

The Tennessee Supreme Court has articulated a deferential standard of review applicable to a trial court's decision on matters of alimony:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson*, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor . . . ."). This well-established principle still holds true today, with this Court repeatedly observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount and duration of the award. *See e.g., Bratton v. Bratton*, 136 S.W.3d 595 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W. 3d 356, 360 (Tenn. 2000).

> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W. 3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an

awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus, 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W. 3d at 335 (quoting *Lee Medical Inc., v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by a trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (footnote omitted).

Tennessee Code Annotated section 36-5-121(d)(1) outlines the four types of spousal support that are recognized under Tennessee law: (1) alimony *in futuro*, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Relevant to the case at bar is the trial court's award of alimony *in futuro* and rehabilitative alimony.[2] At trial, Wife requested that the court award her $15,000 per month in alimony *in futuro*. Ultimately, the trial court awarded Wife $6,000 per month in rehabilitative alimony for three years and an award of $5,000 per month of alimony *in futuro*. The award of alimony *in futuro* was ordered to be paid concurrently with the rehabilitative alimony and would terminate upon either party's death or Wife's remarriage or co-habitation with a third party. In explaining this award of alimony, the trial court stated that it considered, in relevant part, the following:

> Now, with regard to those factors that the Court has to look at when it comes to alimony: Pursuant to TCA 36-5-121 in determining whether the granting of an order for payment of support and maintenance to a spouse is appropriate . . . .
>
> The Court looked at the relative earning capacity, obligation, needs and financial resources of each party, . . . The husband is and continues to be the breadwinner. He has not only the greater earning capacity and resources, but he has always provided for the family. His income more than meets the needs of these parties. . . .
>
> . . . .
>
> . . . . [This] is now almost a 16-year marriage . . . .

---

[2]The court also awarded Wife attorney's fees, which is considered a form of alimony *in solido* and is discussed in Section C below.

. . . .

The extent to which it would be undesirable for a party to seek employment outside the home . . . . the wife has been [an] at-home mom and wife for the last ten years. . . . [T]here are no barriers to her working outside the home . . . .

. . . .

The standard of living of the parties established during this marriage: [the] [p]arties lived a good life but not lavish. . . .

The wife generally was responsible for finances, paying bills, with no budget or obvious restrictions except the purchases of new and expensive vehicles.

. . . .

. . . [T]he Court did take into consideration fault of the parties to this extent: These parties' marriage has been in trouble for many years. The husband admits . . . [to] at least one affair . . . with his nurse. . . . but it was not the only reason for the demise of this marriage. Some fault has to be attributed to Husband for his role in the split and the reason for the termination of counseling and reconciliation efforts. . . .

As to need and ability to pay, the wife is economically disadvantaged, is in need of support, and the husband has the ability to pay. Accordingly, this Court looked at rehabilitation alimony.

As stated above, the trial court awarded Wife $6,000 per month for three years as rehabilitative alimony. With regard to rehabilitative alimony, Tennessee Code Annotated section 36-5-121(d)(2) states the following:

(2) It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce

standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tennessee Code Annotated section 36-5-121(d)(2). The trial court echoed that sentiment in stating that

[r]ehab alimony is favored in Tennessee and is suitable for the facts of this case . . . .

[Wife] should be allowed at least three years for additional education and training in any field she desires, with the Court believing that if she has any interest, that interest may be in law. The wife is awarded $6,000 a month rehab alimony for three years that this Court approves for her to make herself capable of full-time, gainful and meaningful employment, i.e., if she would like to go to law school, *recognizing that will yet be less than any earnings of the husband."* (Emphasis added.)

The trial court then awarded Wife alimony *in futuro* in the amount of $5,000 per month to run concurrently with the aforementioned rehabilitative alimony. Alimony *in futuro* "is intended to provide support on a long-term basis until the death or remarriage of the recipient." *Gonsewski*, 350 S.W.3d at 107 (citing Tennessee Code Annotated section 36-5-121(f)(1)). "An award of alimony in futuro may be made, either in addition to an award of rehabilitative alimony, where a spouse may be only partially rehabilitated, or instead of an award of rehabilitative alimony, where rehabilitation is not feasible." Tenn. Code Ann. § 36-5-121(d)(4). To that end, the trial court in this case opined that it

considered transitional alimony and determined that transitional alimony was not appropriate for this case; however, the Court did determine that alimony *in futuro* was an appropriate form of alimony. Since rehab alimony will not restore Wife to her married status of living, alimony *in futuro* is appropriate. In addition to the above award of rehab alimony . . . Wife is awarded an amount of $5,000 per month *in futuro*.

We determine the trial court's award of both rehabilitative alimony and alimony *in futuro* to be reasonable and supported by the record in this case. With regard to rehabilitative alimony, Wife has a bachelor's degree and her real estate license, but, by agreement of the parties, she had not had gainful employment in nearly a decade. The court found $6,000 per month for three years to be a reasonable amount and period of time to allow Wife to ready herself to re-enter the work force, possibly by attending law school. We do not determine that the trial court applied an incorrect legal standard or abused her discretion in making this award. We therefore affirm the trial court's award

9

of rehabilitative alimony.

With respect to alimony *in futuro*, Wife sought, and attempted to prove with expert testimony, that she was in need of $15,000 per month. The trial court found that "the wife is economically disadvantaged, is in need of support, and the husband has the ability to pay." The court also found that the Wife could only be partially rehabilitated, and she could not be fully restored to the parties' standard of living during the marriage, and therefore alimony *in futuro* was appropriate. After hearing the testimony in this case and considering the statutory factors relative to alimony, the trial court awarded Wife a relatively modest $5,000 per month alimony *in futuro*. There is no question that Wife is the economically disadvantaged spouse. To that end, the trial court found as follows:

> The income of these parties is as such: Wife was not employed outside of the home and she last worked outside of the home in approximately 2004. Historically, the most she earned was approximately 40,000 to 45,000 dollars as a realtor. Otherwise, she only worked part time, and that was many years ago.
>
> The husband is employed and was employed throughout the marriage as a medical doctor. He is a partner at the Mid-South Pulmonary Specialists, P.C.
>
> This Court finds that the elicited testimony puts Wife's current income at approximately zero dollars a month. Testimony evidenced Father's earnings at about $195,000 as a base salary annually with a median income of $72,149.52, extrapolated as a consequence of the following earnings: 2010 . . . $860,887; 2011, $784,798; 2012, $951,707.

From our review of the record we agree with the trial court that Wife can be rehabilitated to an extent, but that would never provide her with the standard of living established by the parties during the marriage or to Husband's post-divorce standard of living. Furthermore, given Husband's very high monthly income, there is no argument to be made that he does not have the ability to pay this amount. In fact, Husband did not raise his ability to pay as an issue, or as a sub-issue, on appeal. We affirm the trial court's award of alimony *in futuro*.

Husband further asserts that the trial court committed reversible error by awarding Wife alimony before dividing all of the parties' marital property. Pursuant to Tennessee law, the sequence of events in a divorce ruling is that a trial court should first make its determinations as to the disposition of the parties' marital property before awarding alimony because one of the factors to be considered in awarding alimony is the

provisions made with regard to the marital property. *See* Tenn. Code Ann. § 36-5-121(i)(8). During the "follow up" ruling on May 20, 2015, the trial court stated as follows:

> The Court: . . . . I got a letter from Ms. Turner [attorney for Husband] indicating that she didn't think it was appropriate to submit any additional information, and so - - she did make a comment that before I granted alimony, I should have completed what I was going to do with the division of the other assets.
>
> So to that extent, I went back and reevaluated, not only the division of the assets, but I looked at the alimony in conjunction with what's what. So I want to make it very clear and very plain as to how the assets are going to be divided. So that means I'm going to go back over a couple of them.
>
> . . . .
>
> So now, in addition to all of the statutory factors when I sat down and reevaluated the issue of alimony, I looked at the wife's expected expenses when I set the alimony and I have again reviewed those. The alimony will stay as ordered.

Although we ultimately hold that the trial court adequately reconsidered its award of alimony in light of the complete division of marital assets, we do note that the conclusory statements made by the court cited above are not the optimal way for a trial court to articulate its determination of a division of assets and award of spousal support. However, the trial court did not go so far as to abuse its discretion in this respect. At all relevant times, the court had before it ample testimony as to Wife's needs and expenses. In fact, Mr. Vance made an extremely detailed spreadsheet of Wife's needs over the remainder of her life expectancy and Husband's ability to pay. And, the court opined that she re-examined all factors relevant to alimony again before the May 20, 2015 ruling. Determining no reversible error, we affirm the trial court's award of alimony.

### *B. Valuation of Husband's Business Interest*

Much of Husband's brief on appeal is devoted to his argument that the trial court erred in its valuation of Husband's business interest in MSPS. On average, Husband's *monthly* income was $72,149.52. Husband's average annual income was in excess of $850,000 per year. After hearing testimony from experts for both parties, the trial court chose to adopt Wife's expert's method of valuation and amount of that value, which set Husband's business interest at $586,000. Nonetheless, on appeal Husband continues to

assert that his interest in MSPS is worth a mere $8,500.

The value of marital property is a question of fact. *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007). "'The value of a marital asset is determined by considering all relevant evidence regarding value.' If the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence." *Powell v. Powell*, 124 S.W.3d 100, 105-06 (Tenn. Ct. App. 2003). "[A] trial court's decision with regard to the value of a marital asset will be given great weight on appeal." *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). "[T]he choice of the proper method or combination of methods [to determine value] depends on the unique circumstances of each corporation." *Id.*

Much testimony was given regarding the value of Husband's interest in MSPS. At the time of trial, MSPS had been in existence since 1989 and was the largest pulmonary group in the Memphis area. The group was comprised of twelve or thirteen partners and nineteen additional non-partner physicians. In the year immediately preceding trial, 2012, the gross revenues for the practice was $15,463,277.

Both parties presented experts who purported to testify as to the "fair market value" of Husband's interest in MSPS. The expert testimony presented at trial varied tremendously, such that the resulting business valuations ranged from $8,500 to $586,000 in value. In his brief, most of Husband's argument related to the valuation of his interest in MSPS can be boiled down to an assertion that his expert was right, Wife's expert was wrong, and that should constitute reversible error. However, Husband's argument overlooks the general rule that the valuation and distribution of marital assets are questions of fact which come to this Court with a presumption of correctness pursuant to Tennessee Rule of Appellate Procedure 13(d). *See Kinard v. Kinard,* 986 S.W.2d 220, 230-31 (Tenn. Ct. App. 1998).

Husband proffered Judson Cannon as his expert on the value of MSPS. Mr. Cannon is a certified public accountant who specializes in health care practices. After much back and forth between counsel regarding his credentials as an expert, the trial court ultimately determined that it would "accept the witness as an expert . . . and give the testimony the weight that the Court feels it deserves." Mr. Cannon explained that, after considering what he deemed to be multiple substantial risks associated with an investment in MSPS, including renegotiation of its contracts, etc., Husband's interest in MSPS was virtually unmarketable at the time. Mr. Cannon therefore turned to what Husband could receive if he left MSPS and cashed in his shares. In that event, the group's mandatory Stock Control Agreement would determine the value of Husband's interest. Analyzing Husband's interest by virtue of the Stock Control Agreement includes the net book value of the business, *less accounts receivable*. According to Mr.

Cannon, the value of MSPS pursuant to the formula in the Stock Control Agreement made Husband's interest worth $8,500.

William Robert Vance, Jr., Wife's expert, is a certified public accountant and business valuation analyst. Mr. Vance testified that he considered "all three of the major approaches . . . the market approach, the asset approach and then the income approach" when deciding how to value MSPS. Mr. Vance testified at length how he came to the conclusion that the income approach, the capitalizations of earnings method, was the most applicable to the medical practice at issue, and he ultimately valued Husband's interest in MSPS to be $586,000. When Mr. Vance was asked why he did not agree that Dr. Mabie's 1/12[th] interest in MSPS was worth only $8,500, his response was "Well, I think to suggest that someone who can make 700, 800, 900,000 dollars per year progressively, that his ownership interest is only worth 8,000 dollars defies logic." And, as we have stated before, a trial judge, as fact finder, is not required to check his or her common sense at the door when considering evidence. *Eberting v. Eberting*, No. E2010-02471-COA-R3-CV, 2012 WL 605512, at *20 (Tenn. Ct. App. Feb. 27, 2012).

In its ruling, the trial court set forth the following reasoning for its valuation:

. . . . This Court went back and looked at the testimony, read the cases with regard to how this business ought to be valued. And except for what the Court considers is the need to have a value attached to this property to ensure that there is equitable division of the assets of these parties, the Court was not overly concerned with methodologies used by the experts to determine what value they were going to place on the property. . . .

. . . .

But having said that, the Court looked at the market approach, the asset approach and the income approach, and believed that the appropriate manner for this business to have been valued is the income[] approach. And the Court's going to accept the income[] approach and the value that's assigned to the business as a consequence of that approach. But that becomes an asset awarded to the husband.

In sum, the trial court ultimately adopted Mr. Vance's methodology and valuation of the business at $586,000. We determine that there is sufficient evidence in the record to support the trial court's valuation, which was within the range of values presented to it.

Husband also argues that the court committed reversible error by not adequately

considering the Stock Control Agreement in its valuation of MSPS. However, from Husband's brief it appears his argument is really that the trial court erred in not considering the Stock Control Agreement as the *only* factor relevant to the value of MSPS. In *Harmon v. Harmon*, No. W1998-00841-COA-R3-CV, 2000 WL 286718 (Tenn. Ct. App. Mar. 2, 2000), this Court took on a similar issue as a case of first impression in Tennessee. The Husband in *Harmon* was a partner physician in a large medical group. *Harmon*, 2000 WL 286718, at *3-4. The by-laws of the entities in which he held an interest contained "buy-sell" clauses that set the value of his stock and bound shareholders to it in the event of a sale. *Id.* at *4. The parties in *Harmon* made similar arguments to the parties in this case. The husband in *Harmon* asserted that his interest in the practice should be valued based on his buy-sell agreement with his partners because he would be bound by that price in the event of an actual sale of his shares. *Id.* The wife argued that buy-sell agreements are set artificially low, excluding things such as accounts receivable and supplies, in order to deter physicians from leaving the clinic. Thus, the wife asserted, the buy-sell agreement did not reflect the true value of her husband's interest in his medical group as a going concern. *Id.* at *12-15. Ultimately, we held that buy-sell agreements may be considered in a business valuation along with any other relevant evidence as to value. However, buy-sell agreements, like the Stock Control Agreement at issue in this case, are not controlling on the value of a business for purposes of a divorce. *See id*. at *29.

Husband seeks to further denounce the trial court's valuation for reaching its conclusion "without addressing federal laws affecting medical practices and without addressing whether the professional corporation statutes in a 'majority' of states contained provisions that would make the stock control agreement binding on a third party." In particular, Husband asserts that a sale of his interest in MSPS would be affected by federal statutes such as the federal Anti-Kickback Statute. However, Wife asserts that Husband should not be permitted to make this argument on appeal because this was not an issue Husband raised at trial. In response, Husband argues that the application of federal statutes, such as the Anti-Kickback Statute, is not something he was required to prove at trial because "[t]he existence of this statute is not a factual question to be proved by evidence at trial; its existence and application is a question of law." As we have previously stated, the court heard extensive testimony on the valuation issue. It is no secret that "[u]nder Tennessee law, issues raised for the first time on appeal are waived." *Black v. Blount,* 938 S.W.2d 394, 403 (Tenn. 1996). We therefore decline Husband's invitation to delve into an analysis of how federal statutes might theoretically relate to an actual sale of his medical practice. We also refuse to remand this issue to the trial court for it to do so when Husband and his expert failed to raise the point when they had the opportunity. "It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) (citations omitted).

Pursuant to Tennessee law, the trial court was free to place a value on this marital asset that was within the range of evidence submitted. *See Wallace,* 733 S.W.2d at 107 (citing *In re Marriage of Johnston, Mont*. 726 P.2d 322, 325 (1986) and *Hein v. Hein,* 366 N.W.3d 646, 650 (Minn. App. 1985)). That is precisely what the trial court did in this case, and we discern no error in the trial court's valuation of Husband's business interest in MSPS.

## C. Trial Court's Award of Attorney's Fees to Wife

Pursuant to the final decree of divorce, the trial court ordered that "Husband shall be required to pay Wife's American Express credit card . . . in the amount of Forty-three Thousand Dollars ($43,000), as an award of attorney's fees to Wife." Husband contends that the trial court erred in this determination because it did not make a finding that Wife was unable to pay her attorney's fees or explain how it determined that $43,000.00 was a reasonable amount.

In the context of a divorce, an award of attorney's fees is considered an award of alimony. *Long v. Long*, 957 S.W.2d 825, 829 (Tenn. Ct. App. 1997). As we have opined above, a trial court is afforded wide discretion in an award of alimony, which in this regard is attorney's fees, and we will not reverse that decision absent a showing of abuse of discretion. *See Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995).

In the "follow-up" ruling on May 20, 2015, the trial court took up the issue of attorney's fees at the same time it was explaining the reasoning behind the alimony award to Wife. With regard to attorney's fees, the Court opined:

> There was a 43,000 or 40-plus-thousand dollar debt on the American express card that was assigned to Husband for Husband to be responsible for, and that was used to pay attorney fees based upon the expressed testimony and statement of the witnesses and statements of the lawyers. So the Court awards that debt that Husband's going to be responsible for Wife's attorney fees. Otherwise, Wife will be responsible for her own fee, Husband will be responsible for his own attorney fees.

After reviewing the trial court's ruling in its entirety, we believe that the trial court established a proper basis for the award of reasonable attorney's fees to Wife. Only a few sentences before the court awarded these attorney's fees to Wife, it explained its reasoning for awarding Wife alimony, and these attorney's fees are in fact alimony. Moreover, at the time the court made the above ruling, the court was fully aware of the full division of marital assets and Wife's needs and expenses. Based on the entire record,

15

including Mr. Vance's spreadsheet of Wife's needs, we hold that the trial court did not abuse its discretion in awarding $43,000 in attorney's fees to Wife. We therefore affirm the trial court's award of attorney's fees to Wife.

### D. Civil Contempt

The final issue Husband presents is whether the trial court committed reversible error by failing to punish Wife for civil contempt for withdrawing money from the parties' joint account in violation of the statutory injunction. The order of the trial court at issue relates to the set of mandatory mutual injunctions imposed on parties pursuant to Tennessee Code Annotated section 36-4-106 when a divorce is filed.

During the trial court proceedings, Husband argued that Wife violated the mandatory statutory injunctions by taking money out of the parties' joint Morgan Stanley account without Husband's knowledge and spending it on things that were not in keeping with the parties' normal expenditures. By the same token, Wife alleged that Husband violated the same injunction by cancelling her credit card. After hearing the testimony of the parties as well as the arguments of counsel, the trial court determined that the Wife was in civil contempt for spending money without Husband's knowledge, but that Husband also violated the injunction when he cancelled Wife's American Express card after the divorce was filed. To that end, the trial court used its discretion and decided that it would "not award any punishment or retribution for the contempt charge. It becomes null and void." Despite the trial court's decision, counsel for Husband pressed the issue again during the May 4, 2015 ruling, and the court responded as follows:

> THE COURT: Well, number one, Ms. Turner, I didn't find dissipation. I said that she violated the - -
>
> . . . .
> - - injunction, right. And the reason I didn't do anything about that is because he cancelled the credit card based on the testimony that I heard from the stand.

"A trial court's decision to hold a party in civil contempt is entitled to great weight and this Court will not disturb that determination absent an abuse of discretion." *Beyer v. Beyer,* 428 S.W.3d 59, 76 (Tenn. Ct. App. 2013) (citing *Hawk v. Hawk*, 855 S.W.3d 573, 583 (Tenn. 1993)). After reviewing the record in its entirety, we conclude that the trial court did not abuse its discretion in declining to punish Wife for civil contempt.

### E. Attorney's Fees on Appeal

The determination of whether to award attorney's fees on appeal is within the sole

discretion of the appellate court. *Moses v. Moses*, E2008-00257-COA-R3-CV, 2009 WL 838105, at \*10 (Tenn. Ct. App. Mar. 31, 2009) (*no perm. app. filed*) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). After considering Wife's request for this Court to award her attorney's fees incurred on appeal, we respectfully decline to do so.

## IV. CONCLUSION

For the foregoing reasons, we affirm the order of the trial court and deny Wife's request for attorney's fees on appeal. Costs of this appeal are taxed to the Husband/Appellant, Matthew Wheeler Mabie, M.D., and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE